And, uh, this is Zhou v. Lynch, and, uh, ten minutes aside. Ready? Yes, I am, Your Honor. Should have brought my sunglasses. I have a spare set. All right. But there's a nice glow over your face. You have guiding light above you. Yeah. Well, may it please the Court, my name is Stephen Rossi. On behalf of… Is the microphone on? I don't know. Does it sound like it's on? Speak right in it, would you please? Testing. There you go. Better? There you go. How about I lean into it a little? Keep it close. Okay. May it please the Court, my name is Stephen Rossi. On behalf of the petitioner, Mr. Zhou, I'll try to reserve two minutes of my time for rebuttal, but I'll keep an eye on the clock. There are three reasons why this Court should hold that the BIA and IJ incorrectly denied Mr. Zhou asylum. Do we look at the IJ at all? Aren't we looking at the BIA opinion only? No, Your Honor. Actually, both of the parties are in agreement that this Court should be looking at both of the opinions because the BIA did some of its own analysis, but generally adopted the IJ's reasoning. We cite Shrestha for that point and the government concedes that point on page 16 of their brief. All right. As I said, there are three reasons why this Court should reverse. Number one, both the BIA and IJ committed fundamental legal error in their persecution analysis when they gave absolutely no weight to the unwanted abortion of Mr. Zhou's child and when they analyzed all the harms imposed on Mr. Zhou in isolation rather than together as required by the totality of the circumstances test. This requires remand. Second, under the credible evidence, Mr. Zhou is entitled to asylum and any reasonable adjudicator would be compelled to find so. This requires remand so that the BIA can exercise the Attorney General's discretion in determining whether to grant Mr. Zhou asylum, but this Court should find that he is, in fact, entitled to asylum. The third point is that there's additional record evidence that the BIA and IJ discredited when they erred and found that Mr. Zhou's statements that were not included in his written statement were incredible. However, they didn't give any weight to his explanations or the change in the law. That, again, is legal error. So turning to our first point, which is the legal error under the persecution analysis, I think we should first visit the holding in JS, which held that petitioners such as Mr. Zhou were no longer per se entitled to asylum based on the unwanted abortion performed on his spouse. This Court in Jiang adopted that holding, but stated that all it stands for is that limited proposition, which is that there's no longer per se eligibility based on an unwanted abortion performed on a spouse. The Court in Jiang went on to explain that under the asylum statute, a petitioner must show, number one, resistance to a population control policy, and number two, persecution as a result. It explained further that under the resistance prong, the unwanted abortion is proof supporting a finding of resistance, but the petitioner must show additional evidence of that resistance. In this case, there's really no dispute that Mr. Zhou has satisfied that prong, neither the IJ, BIA, or government ever raises any issue with that, and we recite several of the facts supporting that finding. But more importantly, turning to the persecution question, this Court in Jiang stated that Wait a minute. You say that there's evidence of resistance, which the BIA and the IJ didn't take into consideration? Actually, there's evidence as to persecution.  All right. And what's the evidence as to persecution? Well, there's several facts, and the most, the fact that's worth the most weight as to the persecution analysis is the unwanted abortion performed on Mr. Zhou's spouse, which neither the BIA nor IJ took into consideration in their persecution analysis. Well, they did take it, but they said that under Jiang, the persecution, the unforced abortion on the wife, there's no derivative persecution to the husband. So, I mean, I might disagree with that. The husband lost a child. But that's what Jiang says, and that's what we're required to hold. But I have a question for you. The BIA says, even assuming arguendo that the respondent's testimony is credible, we agree with the immigration judge that he has not met his burden of establishing, or establishing his eligibility for asylum, asylum based on persecution. Well, I reflected on that thinking, if he's given credibility, and he's, and the four claims, or the four threatening instances of sterilization are given credibility, why isn't that sufficient to prove persecution? Have you thought about that? I mean, I know that he didn't mention sterilization in his statement, which I thought was missing a page, but apparently it isn't. Leaving that aside, which is on a credibility issue, but if the BIA says, assuming we give credibility, so we get rid of the adverse credibility finding, he still hasn't given grounds for persecution, is that correct law? If he's been threatened four times with sterilization? That's a very good point, Judge Bea. Thank you. And I think you're absolutely right that if the BIA was in fact assuming that Mr. Joe was credible as to everything he said, then those threats in combination with all the other harms he had already suffered would support a finding of persecution under the totality of the circumstances. But what harm has he suffered? I understand he's threatened four times, but there's no evidence that the threat was carried out, and there's no evidence that he lost his job or anything of that nature. This is not like a case where somebody was held in Chinese police custody for days and beaten senseless and so on, where there's clear harm visited upon him. Well, I have two points, Judge Tallman. Number one, of course, is that under Jiang, the rule is that an unwanted abortion performed on one's spouse is proof of the fact of persecution. Right, but we're talking about, as Judge Bea points out, that is a factor to be considered, but it is not per se sufficient to establish eligibility for asylum. So your argument is, well, we add to that the four threats, and he's there. And I'm not so sure that's enough. The question is, what other evidence of harm do you have to show past persecution? And I'm very glad you asked that question, Judge Tallman, because if those are the facts that the Court is considering, I'm glad I'm here to correct the record, because actually there are multiple other harms suffered by Mr. Zhou, which were found credible. Give me your laundry list. Well, number one is the forced abortion, which this Court has said is a terrible form of persecution. Beyond that, of course. Is there the threat to the rest after Mr. Zhou argued with the family planning officials after the initial abortion? And that was explicitly found credible on page 6 of the administrative record. The second harm is the need for Mr. Zhou and his wife to flee in order to prevent another abortion of their son, who eventually was born. And this Court has said that the need to flee in order to avoid serious harm can alone be considered persecution. So when you combine those threats along with the abortion and the need to flee, all those things together show a pattern of persecution. But beyond that, there's, of course, the 20,000 yuan fine. And we're not arguing that Mr. Zhou was economically persecuted, but we are arguing, which is proper under footnote 2 of Zhang, that a heavy fine such as Mr. Zhou's combined with all the other harms can support a finding of persecution. The support of finding persecution isn't what we're being asked to find. Does the evidence compel us to find it? Yes, I think it does, Judge Bea. And again, under this Court's whole statements in queue, an unwanted abortion is a serious form of persecution. And then all of the other harms inflicted on Mr. Zhou, although they may not individually support a finding of persecution, for example, because they don't satisfy an economic persecution finding, or by themselves a threat may not be a type of persecution. Under this type of asylum case, the Court is required to look at all of those. How about his fear of future persecution, his return to China? Did he assert that claim? No, Your Honor, we are relying on the assumption of fear of future persecution based on his past persecution, which is assumed when someone is persecuted for their resistance to family planning policies. Say that again. We're relying primarily on the presumption of future persecution that is found when a petitioner has been persecuted for his resistance to a population control policy. So in this case, and under this Court's holding in queue, that is presumed once resistance based on a population control policy is found. Okay. So I see I'm running short on time. If you've got this fear of future persecution if he's returned, and what's the degree of proof that you need on that? We've had cases that say that if there's a 10% chance that you're going to be persecuted if you go back to the country from which you fled, that that's sufficient to establish a claim for persecution. You can stay here. You make that argument? You make that 10% argument anywhere? No, Your Honor, we're not making that argument, again, because of the presumption, the irrebuttable presumption of future persecution that is found. Do you know about that 10%? Yes, Your Honor, we do. You didn't bring it up? Not in our appellate briefs. We didn't challenge the IJ and BIA's finding on that point, simply because it's not necessary under this test. And I see I'm over time. So, Judge Tallman, I just wanted to complete the laundry list, and then I can wrap up if that's all right. Yeah, go ahead. So in addition to the very large fine, and remember that in Jiang, that Court held that a 5,000 yuan fine is a heavy fine, and then in footnote 2, they cite a couple of cases that should not be relied on in finding that such a fine does not support a finding of persecution in a population control policy case. So here, our fine was actually four times as large. In addition to that, after the fine was levied against Mr. Cho, he argued with family planning officials again. They threatened to destroy his home, make him homeless. They threatened to keep his son out of school, and they threatened to arrest him. But I thought the board, and I'm looking at excerpt of record page 4, specifically cited the fact that his home was left alone, he did not suffer serious physical harm, he was not arrested, detained, or fired from his job. So we're back to the same problem I'm having analytically. Threats don't equate actual harm. Why does it compel the agency to conclude that he was persecuted based on those? I would agree that looking at those threats in isolation, probably none of them would support a finding of persecution. But under Jang, the court is required to look at them all together. But you keep talking about supporting a finding, and I wouldn't argue with you. Compelled. Yeah. The question is does it compel. No reasonable fact finder could have concluded anything other than he was entitled to asylum. And this is a post-Real ID Act case, which makes a difference, does it not? And remember, Your Honor, even if this court disagrees with us on that point of whether you would be compelled to find that Mr. Joe was persecuted or not, the first point we're making is that the BIA and IJ just applied the wrong test when they didn't analyze all these things together. So, for example, the IJ said, well, the abortion doesn't satisfy persecution. How can you say that, though? Where they specifically recite all these things in that paragraph that I read a portion of to you. And, therefore, they concluded that he didn't have a well-founded fear of future persecution. Right. And you're talking about the BIA's decision, to be clear, right? Yeah. So on page two of their decision, they first cite to Jang, and then they say that under a Ninth Circuit precedent, the respondent's wife's forced abortion may constitute proof that the respondent resisted China's population control policies. We do not find he demonstrated past persecution based on the totality of the circumstances. And then they cite to Jang, list all the harms suffered by Jang, none of which include the abortion. So they're really just saying, okay, the abortion doesn't count for anything. You have to individually prove persecution in isolation without giving weight to the abortion. I think you and I are just reading what they said. I understand your argument, but I'm not sure I agree with you that they didn't consider all of the individual items of evidence together because it seems to me that's exactly what they're doing on page two. But we read it differently. Why don't we hear from the government? Thank you, Your Honor. All right. Thank you. May it please the Court, I am Sarah Byram, appearing on behalf of the United States Attorney General. This Court should deny the petition for review. Petitioner, represented by counsel at all stages of his removal proceedings, simply cannot compel reversal  The agency's threshold adverse credibility finding The agency identified three specific material admissions, each supported by record evidence, that were substantially related to the basis of Petitioner's asylum statement. Ms. Byram. Yes. The adverse credibility evidence, the finding, is based on his failure to mention sterilization in the statement he gave, the asylum statement. True? Yes. All right. The four threats of sterilization. It seems somewhat inconsistent for the BIA to say, we find adverse credibility finding because he didn't mention sterilization four times. And then to say, but in any case, assuming arguendo that his testimony was credible, he's not met the burden of establishing his eligibility for asylum. So it doesn't seem to be that important to them. Let's get back to the evidence that he has or has not established a basis of asylum. What's wrong with the threat of sterilization four times? Assuming arguendo he's credible. Assuming that he's credible, the issue with the four threats of sterilization is that when taken in combination with the rest of the evidence that he presented, they don't compel persecution, mainly because the threats are hollow. Oh, you're finding that the record compels us to find that the threat of sterilization is hollow because it hasn't happened? I'm arguing that we are arguing that the record compels the conclusion that he has not established past persecution for one reason, because the threats that he alleges are unfulfilled. We find them hollow. And as unfulfilled threats, they do not constitute harm rising to the level of persecution. No matter how dire the threats are, suppose the threat is, we're going to kill you if you see you again, and he takes off, isn't it? If the threats were dire, if there was a threat of imminent harm, then under this court's law, yes, those threats could possibly constitute harm rising to the level of persecution. In this case, these threats were given 1996, end of 1996, 1997, and then he claims that a fourth one was given in 2007, after he was already in the States. Now, there was plenty of time in which the Chinese government, if they wanted to sterilize him, as he claims, could have actually undertaken that action, but they did not. So your position is that the finding that the threats were hollow is a finding which we're compelled to follow because the evidence doesn't compel a contrary result? Yes. Partly, too, compels. And are you also saying that, in essence, what the board did here was double-barrel its decision? First, it said he's not credible, but then it goes on to page 2 to say, but even if we were to find him credible, he still wouldn't make it on the basis of this evidence. Yes, exactly. In this case, the board gave two alternative grounds on which they could deny this case. First, on credibility, and assuming, arguing no credibility, then he cannot meet the merits either. What does the country report tell us? The country reports, in this case, we do know generally that, yes, China does enforce its population control policies. But in this case,  rising to the level of persecution. If we want to consider anyone, that would be his wife, first and foremost, but the asylum applicant is petitioner. And he was threatened, but the Chinese government did not take those threats. And we're talking a span of 17 years. His second child was born in 1990, and then he left China in 2007. The incident at the hospital after his wife has her forced abortion happened shortly after that second child was born in 1990. So for 17 years, although he claims he received these threats, nothing has happened to them. Nothing has happened as a result of these threats. He did have the fine, but the fine wasn't such that it constituted economic persecution. He could still work on his farm. He had multiple jobs. He was still able to support his family, his parents, and send his children to school. So there was no deprivation, no loss of livelihood in that situation. And then... And then taking that into consideration as the totality of the circumstances and not just counting his wife's abortion, which is a factor, it cannot be the only factor, but the board found that his harm doesn't rise to the level of past persecution. Now, to the extent that Petitioner's counsel finds that they have waived the independent future persecution finding, we would note that. But Petitioner cannot establish an independent well-founded fear of future persecution should this court find that there is no past persecution. There's no... Is the finding that there's no past persecution a legal finding which we review de novo or is a factual finding? How do we handle that? What's the scope of review? The scope of review on the past persecution is for substantial evidence, so no record compels the conclusion, so that would be a factual finding. In other words, if there is substantial evidence, we're not allowed to refute it. Yes, that's correct. Turning back to no future persecution, Petitioner has simply not shown any evidence of interest, of future interest by Chinese officials should he return to China. As I stated earlier, he was able to pursue a livelihood, interact with Chinese officials, including having to get necessary documentation over the course of 17 years, really starting after his second child was born, and none of the threats either of which he claims were carried out. So there's no indication that now they would be interested in him upon return. And, of course, most importantly, his family continues to remain in China unharmed. They live on the same farm. They continue to farm the land and his wife and child have remained unharmed. I just wanted to make, briefly, respond to Petitioner's argument about the need to flee being an incident of past persecution. That need to flee does not constitute past persecution in large part because he was fleeing... Well, first, the record indicates that his wife fleed and that Petitioner did not, but that at the time that Petitioner's wife fled, the government had not known that she was pregnant. They did not flee because of some explicit threat that the government had made. And even if they had fled and the government had some knowledge, the individual that was going to suffer the harm in that case was his wife. She was pregnant. She was going to have the forced abortion. There's no indication that even assuming they flew because the government knew and had made a direct threat that he was going to be harmed anyway. But your argument, though, is if he truly fled because he feared the harm, he should have left much earlier than 17 years. Isn't that what you're arguing? That is one portion, yes. It's a hard argument to make that I fled because I feared persecution, but I waited 17 years until I made good my escape. Essentially, yes. And I should note as well that there were periods within those 17 years... When did he pay the fine? It says that it took him... He claims, which is also subject to dispute, though, that it took him 20 years to pay the fine. And his third child was born in December of 1995. That fine was imposed shortly thereafter. So presumably, then, I guess he's still paying it off or has close to paid it off, because that would be 2015. It's not clear. So the math doesn't work out. No. But I should note quickly, in response to your question, there were times within those 17 years as well that he had no threats. There was a period of actually five years where he and his wife received no threats, no incidents with the family planning officials between the time of his second child and his third child. For five years, there was just regular visits, nothing notable. So clearly, there were episodes where the government wasn't interested in him, and that is just another factor for why there's no indication, again, that they're interested in him if he would return. If there are no further questions, I'll conclude. Thank you. Because Petitioner fails to show that the evidence compels reversal of the agency's adverse credibility finding and the denial of his merits claim, the Court should deny this petition for review. Thank you. Thank you. We'll give you a minute or so for rebuttal. Thank you, Your Honor. I just want to respond to the point about fleeing. There's some confusion over which flight we're talking about. We are actually referring to the flight after the second... well, after the abortion, but before Mr. Zhou's son, his third child, was actually born. His wife and Mr. Zhou both fled in order to make sure that the Chinese authorities didn't force them to abort that child. The first abortion occurred in 1995, did it not? The abortion occurred in 1990. 1990. And then his son was born in, I think, 96, and so the flight was in between there. Right. But he doesn't leave until 2007, correct? That's correct. So I'm still having a hard time making a nexus between threat of imminent harm and flight. That's an odd definition of flight. I'm not so sure it is, because at the time he was fleeing, he was fleeing in order to avoid that additional harm that would have been imposed by another forced abortion. And the question... But the problem arises as soon as he has the first child, correct? Because now, if he has any more, he knows what the policy is. Right, that's right, Your Honor. But he remains in China for years unharmed. So how do I find from that evidence, and it really is a temporal analysis here, that there's a nexus to the threat that led to the flight? That's where I'm having problems following your argument. That doesn't sound like flight to me. Well, it's the flight from the continuing threat of the abortion, because he knows the government is keeping an eye on him and his wife. Well, how do you address the point counsel just made about a five-year period where nothing happens? They just go about living their life on the farm in China, sending their kid to school, making payments, installment payments on the fine. Where's the harm? I'm sort of back to the same concern I addressed with you the last time you stood up at the podium. Right, and I understand the desire to look at, well, the perceived lack of harm after the initial harms, but really the question here is whether he was persecuted as a result of resistance, and under this court's... But that goes to the argument as to whether or not the evidence compels the conclusion that he was persecuted, he fled, and he faces future harm if he returned. Doesn't it? I think it all does have to be taken into account, but I don't think he has to prove that he was continuously persecuted until he was actually able to leave the country. I think the question is whether he was persecuted in the past because of his resistance. We have legions of cases that talk about people who stay or move to a different part of the country that are not entitled to asylum because they were able to escape local persecution by relocating. Right, and that is in the... I do not believe there's any such case in the context where it was resistance to a population control policy, so I'm just going to direct the court to Q.V. Gonzalez, and that is the case where this court finds that a forced sterilization will support a finding of persecution which cannot be rebutted, so the government cannot say, well, you no longer have a fear of future persecution because it's a special type of persecution, and this court differentiated these population control policies from the usual asylum case. So with that, I'll wrap up and find that this court should, at a minimum, remand for application of the correct test, but more likely find that Mr. Joe is entitled to asylum. What's that last case you cited? Q.V. Gonzalez, which is 399 F. 3rd 1195. And what you say is that the threat of sterilization is a different kind of threat for purposes of persecution? Right, well, it's talking about involuntary sterilization, and there are several pages talking about how sterilization is a special type of persecution, and then in footnote 8 of that opinion, it says forced abortion as a form of persecution possesses similar unusual characteristics. And the court says psychological trauma, shame, are combined with the irremediable and ongoing suffering of permanently being denied the existence of a son or daughter. Thus, there's an even stronger argument that the presumption cannot be rebutted. What's the citation again? 399 F. 3rd. 3-0-9. 3-9-9. 3-9-9. F. 3rd. F. 3rd. 1195. A what? 1195. 1195. You know, we have these gum sheets that you're supposed to fill out. You're calling a case to our attention for the first time. The clerk will give that to you. Oh, thank you, Your Honor. Yeah. I'll fill that out. All right. Now, let me ask you just one question. Where is the mother now? She's in China, Your Honor. Are they still married? Yes. So the plan all along was to reunite the family here in the U.S., so Mr. Joe, at the time he came to the U.S., was per se eligible to asylum, so he would come, get asylum, and then the family would follow. Had he known the law would change, he would have sent the wife. I'm sorry, Your Honor? Is your client in the court today? No, Your Honor, he's not. Okay. All right, thank you. Is he in custody? No, he's not. Thank you, Your Honor. Thank you, and we'll adjourn. Thank you. Thank you again for taking the case.
judges: Pregerson, Tallman, Bea